665 A.2d 8

**In re Joseph VICTOR.**

**Appeal of Joseph VICTOR.**

Superior Court of Pennsylvania.

Submitted March 28, 1995.

Filed Sept. 22, 1995.

234

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

Charles E. Anderson, Harrisburg, for Norristown State Hospital, participating party.

Before BECK, TAMILIA and CERCONE, JJ.

BECK, Judge:

The issue in this case is the meaning of placement with "the least restrictions consistent with adequate treatment" under the Mental Health Procedures Act, 50 P.S. §§ 7101–7503 ("MHPA").

After a period of in-patient treatment, appellant was subject to an order committing him to 180 days of additional involuntary treatment. Under the statute, 50 P.S. § 7103, involuntary treatment contemplates either inpatient or outpatient status. Appellee Norristown State Hospital petitioned and the court ordered that appellant be committed for an additional period of no more than 45 days of inpatient treatment. After the 45 days appellant would be placed in a long-term structured residence ("LTSR") where he would reside and receive involuntary outpatient treatment for the remainder of the 180–day commitment.

Appellant contends that inpatient treatment for the 45 day period pending LTSR placement was not the least restrictive alternative consistent with adequate treatment. He asserts that he was entitled to outpatient status for the full 180 days.

We disagree and find that the court's order, carefully tailored to meet appellant's individualized treatment needs, was proper under the provisions of the MHPA.

Pursuant to Norristown State Hospital's petition, a hearing was held at which appellant's treating psychiatrist, Dr. Frost, testified. She stated that appellant was diagnosed with chronic undifferentiated schizophrenia. She further testified that prescribed medication was controlling most of appellant's symptoms, that his illness was "very much in remission" with the exception of "lifetime delusions of grandeur" and that appellant had been doing rather well on the ward. As a result, Dr. Frost testified, she had been planning to recommend outpatient treatment for appellant until she learned that placement in an LTSR setting could be arranged within 45 days. Upon learning of the availability of the LTSR placement, she recommended that appellant remain an inpatient for the 45 days and then begin outpatient treatment upon placement in the LTSR. Dr. Frost testified that if immediate outpatient treatment was ordered, appellant intended to return to his own home. Dr. Frost was unable to offer an opinion as to whether appellant would continue to take his medication if he returned home, but opined that if he did not take it, he would probably revert to the behavior that had necessitated the initial involuntary inpatient commitment.

Mr. Firn, the case manager assigned to appellant, testified that he had personally observed the exterior of appellant's home and that all of its windows were broken and the house was not in good physical shape. Mr. Firn also testified regarding the availability of the LTSR placement for appellant. He stated that appellant was number two on the priority list for such placement and that he was confident that the placement would become available within 45 days.

Appellant testified that he wished to be discharged from the hospital and that if released he would take his medication and do whatever was necessary to stay out of the hospital.

At the conclusion of the hearing, the court ordered that appellant be committed for 45 days' inpatient treatment, to be

followed by 135 days' outpatient treatment. Appellant subsequently filed a petition for reconsideration which was denied by the court after argument. This timely appeal followed.

Appellant frames the issue in this appeal as follows:

WAS NOT THE EVIDENCE INSUFFICIENT FOR THE LOWER COURT TO ORDER FURTHER INPATIENT PSYCHIATRIC TREATMENT FOR APPELLANT, JOSEPH VICTOR, PURSUANT TO SECTION 305 OF THE MENTAL HEALTH PROCEDURES ACT OF 1976, 50 P.S. § 7305, AND WAS NOT THAT ORDER IN VIOLATION OF THE MANDATE OF THE MENTAL HEALTH PROCEDURES ACT THAT "... IN EVERY CASE, THE LEAST RESTRICTIONS CONSISTENT WITH ADEQUATE TREATMENT SHALL BE EMPLOYED," 50 P.S. § 7102?

Appellant concedes that an order for 180 days of involuntary outpatient treatment was appropriate in this case. In doing so, he also concedes that the statutory criteria for involuntary treatment have been met.[1] Similarly, he does not dispute the

---

1. Section 103 of the MHPA, 50 P.S. § 7103, provides that the act "establishes rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient." It is thus clear that the statutory requirements for continued involuntary treatment are the same whether that treatment is to be provided on an inpatient or an outpatient basis.

The requirements for recommitment in this case are set out in section 305 of the MHPA, which provides in pertinent part:

(a) At the expiration of a period of court-ordered involuntary treatment ..., the court may order treatment for an additional period upon application of the county administrator or the director of the facility in which the person is receiving treatment. Such order shall be entered upon hearing on findings required by sections 304(a) and (b), and the further finding of a need for continuing involuntary treatment as shown by conduct during the person's most recent period of court-ordered treatment. The additional period of involuntary treatment shall not exceed 180 days.

50 P.S. § 7305(a). Section 304(a) provides in pertinent part:

(2) Where a petition is filed for a person already subject to involuntary treatment, it shall be sufficient to represent, and upon hearing to reestablish, that the conduct originally required by section 301 [providing for involuntary emergency examination and treatment of persons found to be severely mentally disabled, in need of immediate treatment, and to pose a clear and present danger of harm to others or to themselves] in fact occurred, and that his condition continues to

propriety of the LTSR placement. Rather, his sole contention is that the court improperly considered the condition of appellant's home and therefore abused its discretion in ordering that appellant remain an inpatient for the 45–day period between the end of his prior inpatient commitment and the availability of his LTSR placement.

First we note that the appellee-petitioner, Norristown State Hospital, has the burden of showing that its proposal for future inpatient treatment is the least restrictive placement consistent with adequate treatment. Appellee has satisfied that burden. Although the trial court recognized that appellant was ready for involuntary outpatient treatment, the court determined that appellant's circumstances militated against immediate discharge. The court found that if discharged, appellant intended "to return to a residence that was unfit in which to live". Trial Court Opinion at 4. The court therefore reasoned it was in appellant's best interest to continue in inpatient care until the LTSR placement became available. We find that the trial court's decision was in keeping with the procedures and purposes of the MHPA and was therefore proper under the circumstances.

Appellant correctly asserts that all treatment under the MHPA is limited by the statutory requirement that such treatment employ the least restrictions consistent with adequate treatment. 50 P.S. §§ 7102, 7107. However, we cannot agree with appellant's further assertion in order to comply with this mandate of the MHPA, the trial court was required to release him to his home until the LTSR placement could be finalized, and that the condition of his home was irrelevant to treatment decisions.

The MHPA does not require treatment decisions to be made in a vacuum. Rather, it clearly provides that such

evidence a clear and present danger to himself or others. In such event, it shall not be necessary to show the reoccurrence of dangerous conduct, either harmful or debilitating, within the past 30 days. 50 P.S. § 7304(a). Section 304(b) of the MHPA, 50 P.S. § 7304(b), sets forth the procedures by which petitions for continued treatment of those already receiving treatment under section 304 or 305 are to be initiated.

decisions are to be made in light of the full range of facts relevant to an individual's psychiatric condition, including environmental and social factors that may impact upon a patient's condition. Although the MHPA clearly expresses the policy that persons in need of treatment should be subjected to as few restrictions on their liberty as possible, it also clearly makes that policy secondary to the policy of providing effective treatment. Thus the very language upon which appellant relies states that "the least restrictions *consistent with adequate treatment* shall be employed." 50 P.S. § 7102 (emphasis added). "Adequate treatment" is defined as:

"a course of treatment designed and administered to alleviate a person's pain and distress and to maximize the probability of his recovery from mental illness.... Treatment shall include diagnosis, evaluation, therapy, or rehabilitation needed to alleviate pain and distress and to facilitate the recovery of a person from mental illness and shall also include care and other services that supplement treatment and promote such recovery."

50 P.S. § 7104. This broad definition of adequate treatment includes other services that supplement treatment and promote recovery. Its language suggests that the MHPA looks beyond psychiatric intervention to other factors that may affect a patient's progress.

This broad focus is further borne out by the fact that the MHPA requires that for each individual treated pursuant to its provisions, the treatment team formulate an individualized treatment plan, 50 P.S. § 7106, defined as "a plan of treatment formulated *for a particular person* in a program *appropriate to his specific needs.*" 50 P.S. § 7107 (emphasis added). This language clearly establishes that the inquiry as to proper treatment is a highly fact-sensitive one, and must consider all circumstances that contribute to an individual's mental health needs. Such circumstances include the patient's physical and social environment.

The breadth of the proper inquiry of the treatment team in formulating its recommendations and of the court in

entering an order for continuation, modification or termination of treatment in light of such recommendations is also demonstrated by section 304(f) of the MHPA, which provides:

Upon [the findings required by section 304(a)], an order shall be entered directing treatment of the person in an approved facility as an inpatient or an outpatient, or a combination of such treatment as the director of the facility shall from time to time determine. Inpatient treatment shall be deemed appropriate only after full consideration of less restrictive alternatives. Investigation of treatment alternatives *shall include consideration of the person's relationship to his community and family, his employment possibilities, available community resources, and guardianship services.* An order for inpatient treatment shall include findings on this issue.

50 P.S. § 7304(f) (emphasis added). It is thus clear that the decision as to whether inpatient treatment is appropriate includes a consideration not only of the patient's psychiatric condition, but also of the resources that will be available outside the hospital to assist the patient upon discharge. As a necessary part to this inquiry, the court must weigh facts which might impact upon the availability of such resources and social and environmental conditions facing the patient upon discharge.

In this case, the trial court recognized the progress that appellant had made during his inpatient treatment. The court further recognized that a transition to outpatient treatment was appropriate. The court also properly considered the recommendations of appellant's treating psychiatrist and of Norristown State Hospital that the LTSR placement would better serve appellant's specific treatment needs than discharge to his home. Finally, the court, as authorized under the statutory provisions discussed above, evaluated environmental factors, specifically the poor physical condition of the home in which appellant would live and the fact that appellant would live alone if discharged. In light of these proper considerations, the trial court concluded that release of appellant to his home pending availability of an LTSR placement,

although less restrictive than an inpatient placement, would not be consistent with adequate treatment. Under the applicable statutory standards, we conclude that this determination is amply supported by both the law and the record in this case.

Order affirmed.